UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeremy Corey-Gruenes, Daphne Hamborg, Leslie Kaup, Jim Margadant,<br><br>Plaintiff,<br>v.<br><br>The County of Freeborn, Freeborn County Sheriff's Office, Freeborn County Sheriff Ryan Shea, in his official and personal capacities,<br><br>Defendant. | Court File No. 0:26-cv-00468-LMP-DTS<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND** |

## INTRODUCTION

The only issue presented in this case relates to interpretation of the Minnesota constitution and actions taken under Minnesota law. Therefore, this case should be remanded back to state court. On March 26, 2025, Defendant Freeborn County Sheriff Ryan Shea unilaterally signed a 287(g) agreement with Immigration and Customs Enforcement ("ICE"), a violation of state law requiring county board approval for such an action. On October 7, 2025, the Freeborn County Board approved a resolution retroactively ratifying the Sheriff Shea's 287(g) agreement. These state actors violated state law and have been sued in state court. Because no federal question is presented, remand is required pursuant to 28 U.S.C. § 1447(c).

The Freeborn County 287(g) agreement purported to authorize the Freeborn County Sheriff's Office to effectuate ICE civil immigration detainers by (1) notifying ICE before a specific detainee or inmate is released from custody, and (2) maintaining custody of that

person for up to 48 hours after they would otherwise have been released so that ICE may assume custody over them. (ECF No. 1-1, Compl., Ex. A (App'x A).) The agreement was entered into in violation of Minnesota law and purports to authorize county law enforcement officials to take actions that are prohibited under state law.

In enacting legislation authorizing 287(g) agreements, Congress made clear that participation in a 287(g) agreement by the federal government, a state, or a political subdivision of a state is voluntary and that 287(g) agreements must be "consistent with State and local law":

> [T]he Attorney General **may** enter into a written agreement with a State, or any political subdivision of a State, pursuant to which an officer or employee of the State or subdivision… **may** carry out such function at the expense of the State or political subdivision and **to the extent consistent with State and local law**…. Nothing in this subsection shall be construed to require any State or political subdivision of a State to enter into an agreement with the Attorney General under this subsection.

8 U.S.C. § 1357(g)(1), (9); *see also Esparza v. Nobles Cnty*. No. 52-CV-18-751, 2019 WL 4594512, at \*8 (Minn. Ct. App. Sept. 23, 2019) ("Once properly certified, state and local officers can carry out federal immigration functions under a 287(g) agreement 'to the extent consistent with State and local law.'").

Under Minnesota law the actions authorized by Freeborn County's 287(g) agreement are illegal. In *Esparza*, the Minnesota Court of Appeals found that detaining individuals after their release from state custody is a seizure under Article 1, section 10, of the Minnesota Constitution, and is unauthorized under Minnesota law. 2019 WL 4594512, at \*4-5. The district court in *Esparza* then granted Plaintiffs summary judgment and a

permanent injunction. *Esparza*, No. 53-CV-18-751, Index No. 188 (Nobles Cnty. Dist. Ct. Jan. 30, 2020). Subsequently, the Minnesota Attorney General issued an opinion stating that "Minnesota law prohibits law enforcement officers from detaining or holding persons based solely on ICE civil immigration detainers regardless of whether the law enforcement agency is operating under a valid 287(g) agreement." (*See* Compl., Ex. C, at p. 2 (Op. Atty. Gen. 3-a; 390a6 (Dec. 12, 2025.).).)

Plaintiffs are four Freeborn County taxpayers alleging that the actions of Sheriff Shea and Freeborn County are *ultra vires* acts because the "authorized functions" set forth in that 287(g) agreement are not consistent with Minnesota law. (ECF No. 1-1, Compl., Ex. A (App'x A).) To be clear, Plaintiffs are not claiming that all 287(g) agreements are illegal, or even that it would be impossible for Defendants to enter into a valid 287(g) agreement. Rather, Plaintiffs are claiming that Defendants' entry into *this* 287(g) agreement is illegal because the "authorized actions" are illegal under Minnesota law.

Defendants contend that this Court has federal question jurisdiction because "Plaintiffs' claims are preempted by the federal authority to regulate immigration." (Notice at 3, ¶ 10; *see also id.* ("[F]ederal law completely preempts…plaintiff[s'] state-law claim.").) It is, however, a curious claim of preemption where there is no requirement that the federal government, a state, or a state political subdivision enter into a 287(g) agreement, and state law provides the baseline for 287(g) agreements. Recognizing the federalism principles inherent in 287(g) agreements, not only have state courts ruled on the

3

legality of these agreements, but some states have completely barred them.[1] In short, 287(g) agreements are a permissive, not a mandatory, form of federal-state cooperation which cannot and do not expand the power of state officials to act. The language of 8 U.S.C. § 1357(g)(1) states that state law establishes the powers of state officials pursuant to a 287(g) agreement, and Minnesota has not given state officials any authority to act as federal immigration agents. Thus, the question of whether Defendants' 287(g) agreement is ultra vires is not a federal question because it only implicates state law. Accordingly, this Court must remand this matter to state court.

## BACKGROUND

On March 26, 2025, Sheriff Shea executed a 287(g) "Memorandum of Agreement: Warrant Service Officer Program" (the "MOA" sometimes referred to herein as a "287(g) agreement"). (ECF No. 1-1, Compl. ¶ 23.) Sheriff Shea executed the MOA unilaterally and did not obtain County Board approval prior to its execution as required by Minnesota's Joint Exercise of Powers Act, Minn. Stat. § 471.59, which regulates joint and cooperative agreements between governmental units, including agreements between counties and agencies of the federal government. (*Id.* ¶ 24.)

---

[1] *See https://boltsmag.org/virginia-spanberger-quits-ice-program-287g/* (noting that newly-elected Virginia Governor Abigail Spanberger has ordered four state agencies, including the state police and Department of Corrections, to end their 287(g) agreements); *https://www.washingtonpost.com/dc-md-va/2026/02/05/virginia-spanberger-ice-trump-immigration/* (stating that Hawaii, Maryland, New Mexico, and New York are considering similar bans to state participation in 287(g) agreements).

A.	**ICE Civil Immigration Detainers & 287(g) Agreements.**

Pursuant to the Immigration and Nationality Act ("INA"), the Secretary of the Department of Homeland Security has promulgated regulations that authorize ICE to issue civil immigration detainers. 8 U.S.C. § 1103(a)(3); 8 C.F.R. § 287.7. An immigration detainer advises another federal, state, or local law enforcement agency that ICE is asking a detention facility to undertake two tasks: (1) notify ICE before a specific detainee or inmate is released from custody, and (2) maintain custody of that person for up to 48 hours—excluding Saturdays, Sundays, and holidays—after he or she would otherwise have been released so that ICE may assume custody over them. 8 C.F.R. § 287.7(a), (d). Immigration detainers are requests to detention facilities—they are not commands. See 8 C.F.R. § 287.7(a) (stating that "[t]he detainer is a request").

ICE uses a consolidated form, I-247-A, when issuing civil immigration detainer requests, and the detainer must be accompanied by one of two types of administrative warrants: form I-200 or form I-205. See U.S. Immigr. & Customs Enf't, Policy No. 10074.2, https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf. Both types of administrative warrants are signed by a federal immigration official, and they are addressed to federal immigration officers for execution. Neither type of administrative warrant (I-200 or I-205) or immigration detainer (I-247-A) is signed by a member of the federal judiciary such as an Article III federal judge or a federal magistrate judge, and they are not reviewed by any impartial and independent judicial officer. *See* 8 C.F.R. § 287.5 (authorizing ICE and Customs and Border Protection agents and officers to issue administrative warrants such as form I-200); 8 CFR § 1241.32 (DHS district director issues

5

form I-205); 8 C.F.R. § 287.7(a) ("Any authorized immigration officer may at any time issue a Form I-247.").

Section 287(g) of the INA authorizes the Secretary of the Department of Homeland Security to enter into a written agreement with a state or any political subdivision of a state so that qualified personnel can perform certain functions of an immigration officer. 8 U.S.C. § 1357(g). Such authority has been delegated by the Secretary to ICE, and such written agreements are commonly referred to as "287(g) agreements." Significantly, a 287(g) agreement only allows state and local officials to perform certain immigration functions "to the extent consistent with State and local law." 8 U.S.C. § 1357(g). It does *not* purport to give new powers to state officials that do not already exist under state law.

### B.     The Freeborn County 287(g) Agreement.

Section IV.A to the MOA entitled "Designation of Authorized Functions" states that "[a]pproved participating [Freeborn Sheriff] personnel will be authorized to perform only those immigration officer functions set forth in… Appendix A." (*Id.* ¶ 26 & Ex. A, § IV.A.) Appendix A sets forth the designated "Authorized Functions" as follows:

> Participating [Freeborn Sheriff] personnel are only delegated the two authorities listed below:
>
> - The power and authority to serve and execute warrants of arrest for immigration violations, 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.5(e)(3), on designated [noncitizens] in [the Freeborn Sheriff's] jail/correctional facilities at the time of the [noncitizen's] scheduled release from criminal custody in order to transfer custody of the [noncitizen] to ICE; and
>
> - The power and authority to serve warrants of removal, 8 U.S.C. § 1357(a) and 8 C.F.R. §§ 241.2(b)(2),

6

> 287.5(e)(3), on designated [noncitizens] in [the Freeborn Sheriffs's] jail/correctional facilities at the time of the [noncitizen's] scheduled release from criminal custody that executes the custodial transfer of the [noncitizen] to ICE for removal purposes.
>
> Upon transfer of the [noncitizen's] custody to ICE, the [noncitizen] will continue to be held in the [Freeborn Sheriff's] jail/correctional facilities <u>for no more than 48 hours unless</u> there exists an agreement pursuant to which the [Freeborn Sheriff] will continue to detain, for a reimbursable fee, [noncitizens] for immigration purposes. In the absence of an agreement, if the [noncitizen] is not transferred to an ICE field office or an immigration detention facility within 48 hours, the [noncitizen] <u>shall be released</u> from the [Freeborn Sheriff's] jail/correctional facility.

(*Id.* ¶¶ 27-28 & Ex. A, App'x A (emphasis in original).)

### C. Minnesota Attorney General Informs Sheriff Shea and Freeborn County that the 287(g) Agreement Violates Minnesota Law.

On September 19, 2025, the Minnesota Attorney General's Office sent a letter to Sheriff Shea. (*Id.*, Ex. D.) In that letter the Attorney General informed Sheriff Shea that the 287(g) agreement he had signed in March 2025 violated Minnesota's Joint Exercise Powers Act because that law requires "such agreements be entered into by a resolution of the board of county commissioners." *Id.* (citing Minn. Stat. § 471.59, subd. 8.) This same letter expressly told Sheriff Shea in writing that a 287(g) agreement does not permit the Freeborn Sheriff to hold a person pursuant to an immigration detainer:

> I also write to advise you that Minnesota law prohibits state and local law enforcement from holding a person based on a civil immigration detainer. *See* Op. Atty. Gen. 3a (Feb. 6, 2025). We had previously left open the question of whether a valid 287(g) agreement could authorize detentions prohibited by state law. *See id.* We have not concluded that they do not. Section 287(g) itself authorizes state and local officials to

7

> perform certain immigration functions only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g). Officers must therefore comply with Minnesota law even when acting pursuant to a valid 287(g) agreement. *See, e.g.*, *Nash v. Mikesell*, 557 P.3d 369, 378 (Colo. Ct. App. 2024); *City of El Cenizo, Tex. v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018). The detention of a person pursuant to a civil immigration detainer therefore violates Minnesota law even if done pursuant to a valid 287(g) agreement and may expose the county or officers to liability.

(*Id.*, Ex. D.)

In apparent response to the Minnesota Attorney General's September 19, 2025 letter, Sheriff Shea presented a resolution to the County Board to "ratify the decision he has already made." (*Id.* ¶ 37.) No community input was solicited and the County Board immediately proceeded to a vote on the resolution. (*Id.* ¶ 39.) By way of the Resolution, the County Board purported to retroactively ratify the MOA effective March 26, 2025. (*Id.* ¶ 41.)

On December 12, 2025, the Minnesota Attorney General issued another advisory opinion. (*Id.* Ex. C). Section I of the opinion reaffirmed that the Minnesota Joint Exercise of Powers Act prohibits sheriffs from unilaterally entering into a 287(g) agreement with ICE. (*Id.* at pp. 2-3.) Section II of the opinion states that "287(g) agreements do not alter Minnesota law enforcement officers' obligations to comply with Minnesota law and do not authorize them to hold persons pursuant to immigration detainers who would otherwise be released" under Minnesota law. (*Id.* at p. 4) The Minnesota Attorney General's opinion noted that there is a state law prohibition on holding a person based solely on an immigration detainer, that this prohibition extends to officers acting under 287(g)

agreements, and that federal law does not authorize local law enforcement officers acting under 287(g) agreements to make arrests prohibited by state law. (*Id.* at p. 7 ("[F]ederal law does not displace state law obligations for officers acting under 287(g) agreements.").)

### D.     Defendants' Joint Notice of Removal.

On January 20, 2026, Defendants filed a Joint Notice of Removal. As set forth in the Notice of Removal, Defendants assert that this Court has federal question jurisdiction under 28 U.S.C. § 1331 because the state law claims raised in Plaintiffs' complaint are "preempted by federal law." (Joint Notice of Removal at p. 3 ¶ 10, *Corey-Gruenes v. Cnty. of Freeborn*, No. 24-CV-25-2086, Index No. 23 (Freeborn Cnty. Dist. Ct. Jan. 20, 2026), attached as Exhibit 1 to Declaration of Peter C. Hennigan ("Hennigan Decl."). Specifically, Defendants contend that Minnesota's state law forbidding state officials from holding individuals pursuant to ICE civil immigration detainers is preempted under the doctrine of "obstacle preemption" because Minnesota's laws "obstruct federal objectives." (*Id.* at 4, ¶ 15.)

### E.     The Parties' Meet and Confer Efforts.

On January 28, 2026, counsel for Plaintiffs sent a letter to Defendants' attorney requesting that they withdraw their Notice of Removal and stipulate to remanding the case to state court because their preemption arguments were not well founded given that the 287(g) agreement program is not compulsory and the "the language of [8 U.S.C.] § 1357(g) expressly provides that state and local law enforcement officers may carry out immigration functions only so long as exercising those functions is 'consistent with State and local law.'" (Hennigan Decl., Ex. 2 (quoting 8 U.S.C. § 1357(g)(1)).)

9

In response, on February 2, 2026, the Freeborn County's attorney sent an email relating Defendants' belief that "our removal is well founded and will not be withdrawn" and that "the County believes that the federal [government] is a necessary and indispensable party." (Hennigan Decl., Ex. 3.)

## ARGUMENT

**I. STANDARD OF REVIEW FOR REMOVAL BASED ON FEDERAL QUESTION JURISDICTION**

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *Baker v. Martin Marietta Materials, Inc.*, 745 F.3d 919, 923 (8th Cir. 2014) (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010)); *see also* 28 U.S.C. § 1441. "[T]he party seeking removal has the burden to establish federal subject matter jurisdiction, [and] all doubts about federal jurisdiction must be resolved in favor of remand." *Baker*, 745 F.3d at 923 (quoting *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009)).

"Removal based on federal question jurisdiction is governed by the well pleaded complaint rule: jurisdiction is established only if a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009). Accordingly, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Cent. Iowa Power*, 561 F.3d at 912 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Defendants may not "inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th

Cir. 2000). Moreover, "[i]t is firmly established that a federal defense, *including a preemption defense*, does not provide a basis for removal, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case.'" *Cent. Iowa Power*, 561 F.3d at 912 (quoting *Caterpillar*, 482 U.S. at 393) (emphasis added). "In plain terms, unless the face of a plaintiff's complaint states a federal question, a defendant may not remove a case to federal court on this basis, even though a possible defense might involve a federal question." *Ervast v. Flexible Prod. Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003) (citing *Kemp v. Int'l Bus. Machs. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997)).

## II.   STANDARD OF REVIEW FOR OBSTACLE PREEMPTION

Any state law that conflicts with any federal statute or duly authorized federal regulation is preempted under the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2; *City of New York v. F.C.C.*, 486 U.S. 57, 63–64 (1988). A federal law may either expressly or impliedly preempt a state law. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). A federal law expressly preempts a state law when the statutory language clearly evinces an intent to do so. *Id*. Implied preemption occurs when the scope of the federal "statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law." *Id.* at 76–77.

Under either form of preemption, congressional intent "is the ultimate touchstone." *Altria*, at 76. In all preemption cases, the inquiry "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act *unless*

11

*that was the clear and manifest purpose of Congress.*" *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (emphasis added, internal quotation marks and citations omitted).

Obstacle preemption is a type of conflict preemption that applies "where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Obstacle preemption occurs where state law "interferes with the methods by which the federal statute was designed to reach this goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Arizona*, 567 U.S. at 399 (quotation marks and citation omitted).

### III. OBSTACLE PREEMPTION IS IRRELEVANT HERE AND PROVIDES NO BASIS FOR REMOVAL

In their Joint Notice of Removal, Defendants contend that "federal immigration law supersedes conflicting state laws." (Hennigan Decl., Ex. 1 (Notice of Removal ¶ 14).) But there is no conflicting state law at issue here. Contrary to Defendants' claims, nothing in the language of 8 U.S.C. § 1357(g) indicates that Congress intended for the 287(g) program to preempt state law or viewed state law as an obstacle to the implementation of the 287(g) program. To the contrary, the federal statute authorizing 287(g) agreements expressly provides that these agreements must abide by existing state and local law and that they are voluntary.

First, the express language of 8 U.S.C. § 1357(g)(1) provides that state and local law enforcement agencies can only carry out 287(g) agreements "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1). By subordinating state and local law enforcement agency cooperation to State law, "[f]ederal law does not suggest the intent—let alone a 'clear and manifest' one—to prevent states from regulating whether their *localities* cooperate in immigration enforcement." *City of El Cenizo v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018) (emphasis in original); *see also Arizona*, 567 U.S. at 400 (holding that courts should presume that a state's police powers are not superseded "unless that was the clear and manifest purpose of Congress").

Second, 287(g) agreements are entirely voluntary, and there is no requirement that a state or local government enter into any such agreement. *See* 8 U.S.C. § 1357(g)(9) ("Nothing in this subsection shall be construed to require any State or political subdivision of a State to enter into an agreement with the Attorney General under this subsection."); *see also City of El Cenizo*, 890 F.3d at 178 ("Section 1357 does not require cooperation at all."). In *United States v. California*, 921 F.3d 865 (9th Cir. 2019), the Ninth Circuit Court of Appeals concluded that a California law limiting cooperation between state and local law enforcement and federal immigration authorities was not preempted because "[f]ederal law provides states and localities the *option*, not the *requirement*, of assisting federal immigration authorities." *Id.* at 889 (emphasis in original). As the Ninth Circuit Court of Appeals reasoned, a state's choice to refrain from participation "cannot be invalid under the doctrine of obstacle preemption where [states] retain[ ] the right of refusal." *Id.* at 890.

In *Nash v. Mikesell*, 557 P.3d 369 (Colo. Ct. App. 2024), the Colorado Court of Appeals addressed the question of obstacle preemption and found it wanting for the reasons cited above. At issue in *Nash* was whether a Colorado statute, 24 C.R.S. § 24-76.6-102, addressing civil immigration detainers was preempted by federal law. In language mirroring *Esparza*, the Colorado statute stated that "continued detention of an inmate at the request of federal immigration authorities beyond when he or she would otherwise be released constitutes a warrantless arrest, which is unconstitutional," and "a law enforcement officer shall not arrest or detain an individual on the basis of a civil immigration detainer request." *Nash*, 557 P.3d at 376 (quoting 24 C.R.S. § 24-76.6-102). Relying on the statutory language in 8 U.S.C. § 1357(g), the Colorado Court of Appeals found there was no obstacle preemption because Colorado law enforcement officers "remain subject to Colorado law even though they are *also* subject to federal law while performing immigration enforcement functions," and that the voluntary nature of the 287(g) program meant that "Congress didn't clearly intend to supersede state law in this area." *Nash*, 557 P.3d at 377-78 (emphasis in original).

## IV.   PLAINTIFFS' COMPLAINT DOES NOT STATE A FEDERAL QUESTION

Importantly, Plaintiffs are not asking this Court—or any court—to rule on the validity of the 287(g) program. Defendants might have a basis for removal if Plaintiffs were seeking a declaratory judgment to invalidate the 287(g) program. But they are not. As set forth in their complaint, Plaintiffs are only seeking a declaratory judgment that (1) the agreement signed by Sheriff Shea was entered into without proper authorization, and (2) that the "authorized functions" in the Freeborn County 287(g) agreement are illegal

14

*under Minnesota law* because these "authorized functions" are not "consistent with State and local law," 8 U.S.C. § 1357(g)(1):

> Under Minnesota law, the designated "authorized functions" set forth in Appendix A to the MOA are unlawful…. Plaintiff taxpayers are entitled to a declaratory judgment pursuant to the Declaratory Judgments Act, Minn. Stat. § 555.01 et seq. stating that the Resolution of the County Board entering into the MOA with ICE (and the prior agreement between Sheriff Shea and ICE) were ultra vires and, therefore, they are prohibited from taking actions pursuant to the MOA because such actions are outside the scope of their legal authority, and the Freeborn Sheriff and County Board are enjoined from taking any action, incurring or appropriating any costs, expenses or obligation, pursuant to or as a result of the ultra vires 287(g) agreement.

(Compl. ¶¶ 45, 49.) In short, Plaintiffs' Complaint raises purely state law claims about whether the terms of the Freeborn County 287(g) agreement comport with how Minnesota courts and the Minnesota Attorney General have interpreted state law. Since Plaintiffs have not presented a federal question on the face of their complaint and are only relying on state law, removal to federal court is improper. *See Pet Quarters*, 559 F.3d at 779; *Cent. Iowa Power*, 561 F.3d at 912.

## V.     THE FEDERAL GOVERNMENT IS NOT AN INDISPENSABLE PARTY

Although not set forth in their Joint Notice of Removal, Defendants' counsel has stated in meet and confer communications that "the County believes that the federal [government] is a necessary and indispensable party." (Hennigan Decl., Ex. 3.)

Rule 19 of the Federal Rules of Civil Procedure requires that, under certain circumstances, a person must be joined as a party in an action. Fed. R. Civ. P. 19(a). Specifically, a party must be joined if "in that person's absence, the court cannot accord

15

complete relief among existing parties" or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Id.*

In *C.F.C. v. Miami-Dade County*, 349 F. Supp. 3d 1236 (S.D. Fla. 2018), the district court found that that the federal government was not an indispensable party to a lawsuit challenging a county's immigration enforcement policies under a 287(g) agreement where the policy in question was a voluntary policy executed by the County:

> Plaintiffs challenge the County's policy of complying with voluntary requests from a federal agency as unconstitutional. Taking these allegations as true, it would not be necessary to join the federal government in order to rule on the constitutionality of the County's policy or whether the policy caused Plaintiffs' Fourth Amendment rights to be violated…. While the U.S. Government may have a legitimate interest in carrying out immigration enforcement, it certainly does not have a legitimate interest in ensuring that the County does so…. And the U.S. Government has no interest involving the County's allegedly unconstitutional policy because this policy pertains to a voluntary decision the County has made to honor ICE detainers.

*Id.* at 1268-69.

The holding in *C.F.C. v. Miami-Dade County* aligns with the general principle that when plaintiffs challenge local implementation of federal programs rather than the federal programs themselves, the federal government need not be joined. In *Milwaukee County Pavers Ass'n v. Fiedler*, 731 F. Supp. 1395, 1407 (W.D. Wis. 1990), the district court held that the federal government was not indispensable to a challenge to a state's

16

implementation of federal legislation requiring set-asides, because the lawsuit was "directed toward the state's implementation of the federal legislation, not toward the federal legislation itself." The holding in *Milwaukee County Pavers* equally applies here. Plaintiffs are not challenging the federal legislation the created the 287(g) program, they are only challenging the County's implementation of that program.

## VI.  PLAINTIFFS SHOULD BE AWARDED THEIR FEES AND COSTS

28 U.S.C. § 1447(c) permits the award of "just costs and any actual expenses, including attorney fees, incurred as a result of [a] removal" when a case is remanded after a removal. To determine whether to award fees, courts consider the "reasonableness of the removal" and award costs and fees under Section 1447(c) when the removing party "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Section 1447(c) awards do not function as sanctions. *Robinson v. Pfizer, Inc.*, 855 F.3d 893, 897-98 (8th Cir. 2017). Rather, Section 1447(c) is merely a fee-shifting statute, and a finding or showing of bad faith is not required. *Id.* at 898 (citing *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000). Here, there is no objectively reasonable basis for removal alleged in Defendants' Joint Notice of Removal because the statutory structure of 8 U.S.C. § 1357(g) clearly does not support Defendants' preemption argument. Moreover, Defendants were made aware of the legal infirmity of their removal arguments on January 28, 2026, but nonetheless persisted in pursuing their baseless removal claims. Accordingly, an award of costs and fees to Plaintiffs is appropriate.

## **CONCLUSION**

Defendants have failed to establish that the Court has jurisdiction over this dispute. There is no federal question on the face of Plaintiffs' complaint and Defendants' obstacle preemption arguments are meritless. For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion, remand this action to Freeborn County District Court, and award Plaintiffs their costs and fees for having to bring this remand motion under 28 U.S.C. § 1447(c).

Dated:  February 12, 2026	**MASLON LLP**

By: /s/*Peter C. Hennigan*
William Z. Pentelovitch (#85078)
Anna Petosky (#388163)
Peter C. Hennigan (#031089X)
225 South Sixth Street, Suite 2900
Minneapolis, MN  55402
(612) 672-8200
Email:   bill.pentelovitch@maslon.com
anna.petosky@maslon.com
peter.hennigan@maslon.com

**AND**

|  |  |
|---|---|
|  | **AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA** |
| Dated: February 12, 2026 | By: */s/Teresa Nelson*<br>Teresa Nelson (#0269736)<br>Ian Bratlie (#319454)<br>Alicia Granse (#400771)<br>Benjamin Casper (#0276145)<br>   *Supervising Lawyer*<br>Lilian Mura<br>Samuel Miller<br>   *Supervised Law Student Practitioners*<br>P.O. Box 14720<br>Minneapolis, MN 55414<br>(651) 271-6661<br>Email:  tnelson@aclu-mn.org<br>          ibratlie@aclu-mn.org<br>          agranse@aclu-mn.org<br>          bcasper@aclu-mn.org<br><br>**ATTORNEYS FOR PLAINTIFFS JEREMY COREY-GRUENES, DAPHNE HAMBORG, LESLIE KAUP, AND JIM MARGADANT** |