**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JEREMY COREY-GRUENES;
DAPHNE HAMBORG; LESLIE
KAUP; and JAMES MARGADANT,

                Plaintiffs,

v.

COUNTY OF FREEBORN;
FREEBORN COUNTY SHERIFF'S
OFFICE; and RYAN SHEA, *Freeborn
County Sherriff in his official and
personal capacities*,

                Defendants.

Case No. 26-cv-468 (LMP/DTS)

**ORDER GRANTING
MOTION TO REMAND**

---

Peter C. Hennigan, William Z. Pentelovitch, and Anna Petosky, **Maslon LLP, Minneapolis, MN**; and Teresa Nelson, Ian Bratlie, Alicia Granse, Benjamin Casper, Lilian Mura, and Samuel Miller,[1] **American Civil Liberties Union of Minnesota, Minneapolis, MN**, for Plaintiffs.

Paul Bosman, **Freeborn County Attorney's Office, Albert Lea, MN**, for Defendants.

      On March 26, 2025, Freeborn County Sheriff Ryan Shea ("Sheriff Shea") entered an agreement with Immigration and Customs Enforcement ("ICE") that allows Sheriff Shea and the Freeborn County Sheriff's Office to enforce certain federal immigration laws. *See* ECF No. 1-1 at 1. On December 18, 2025, four citizens of Freeborn County ("Plaintiffs") brought suit in Minnesota state court asserting the agreement violates

---

[1]     Lilian Mura and Samuel Miller are law student practitioners supervised by Benjamin Casper. The Court acknowledges and appreciates that Plaintiffs credited the contributions of these law students in the briefing and at oral argument.

Minnesota state law. *See generally id.* Freeborn County, the Freeborn County Sheriff's Office, and Sheriff Shea (collectively "Defendants"), jointly removed the action to this Court, asserting federal-question jurisdiction under 28 U.S.C. § 1331. ECF No. 1. Plaintiffs now move to remand, contending that the complaint raises no issues of federal law. ECF No. 6. For the following reasons, the Court grants Plaintiffs' motion and remands this action to state court.

## BACKGROUND

On March 26, 2025, Sheriff Shea entered a "Memorandum of Agreement" (hereinafter the "287(g) Agreement") with ICE under which ICE authorized Sheriff Shea and the Freeborn County Sheriff's Office "to perform certain immigration enforcement functions."[2] *See* ECF No. 1-1 at 19–28. For instance, the 287(g) Agreement purports to allow the Freeborn County Sheriff's Office to "serve and execute warrants of arrest for immigration violations," and to "serve warrants of removal" on noncitizens to execute custodial transfer to ICE. *Id.* at 26. The 287(g) Agreement also authorizes Freeborn County to detain noncitizens for up to 48 hours after the noncitizen would otherwise be released from state custody. *Id.*

---

[2] Although federal immigration law is largely enforced by the federal government, 287(g) Agreements "enable state officers to enforce federal law 'in relation to the investigation, apprehension, or detention of aliens in the United States.'" *Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904, 923 (8th Cir. 2025) (quoting 8 U.S.C. § 1357(g)(1)). As the Eighth Circuit identified, Congress gives discretion to federal officers in enforcing federal immigration law, with limited opportunities for the involvement of states. *Id.* at 924 (citing 8 U.S.C. § 1357(g)). The statute that authorizes such agreements, 8 U.S.C. § 1357(g), is also known by its shorthand citation under the Immigration and Nationality Act: Section 287(g).

Sheriff Shea signed the 287(g) Agreement unilaterally, without first obtaining approval from any other Freeborn County governmental entity. ECF No. 1-1 ¶ 24. On September 19, 2025, Minnesota Attorney General Keith Ellison sent a letter to Sheriff Shea informing him that the 287(g) Agreement "violates Minnesota law and is invalid." ECF No. 1-1 at 48–49. Specifically, Attorney General Ellison wrote that Minn. Stat. § 471.59 requires that "joint and cooperative agreements" between a county and other "governmental units" must be "entered into by a resolution of the board of county commissioners." *Id.* at 48. Because Sheriff Shea entered the 287(g) Agreement without obtaining such a resolution, Attorney General Ellison remarked that the 287(g) Agreement was invalid. *Id.* at 48–49. Attorney General Ellison informed Sheriff Shea that Freeborn County could enter a new and "valid agreement" if the County Board of Commissioners adopted an appropriate resolution. *Id.* at 49. But the letter also opined that local law enforcement officers must "comply with Minnesota law even when acting pursuant to a valid" 287(g) Agreement and that "Minnesota law prohibits state and local law enforcement agencies from holding a person based on a civil immigration detainer." *Id.* As a result, the "detention of a person pursuant to a civil immigration detainer . . . violates Minnesota law even if done pursuant to a valid 287(g) [A]greement and may expose the county or officers to liability." *Id.*

In response, Sheriff Shea presented a resolution to the Freeborn County Board of Commissioners to "ratify" the 287(g) Agreement. He did so because "other sheriffs have found themselves in liability issues getting sued by the ACLU when they're not releasing someone fast enough when they're done with their criminal part of it but still have an ICE

3

warrant." *Id.* ¶ 37.  The Freeborn County Board unanimously approved the resolution. ECF No. 1-1 at 51.

Plaintiffs, who are citizens of Freeborn County, *see id.* ¶¶ 1–4, brought an action in Minnesota state court on December 18, 2025, *see generally id.*  The complaint brings one claim for relief, a "Taxpayer Action" under Minnesota law, asserting that the 287(g) Agreement will result in "illegal expenditures" paid by Freeborn County residents because the 287(g) Agreement authorizes activities that violate Minnesota law and exposes Freeborn County to civil lawsuits.  *Id.* ¶¶ 46–47.  Plaintiffs seek a declaratory judgment under Minn. Stat. § 555.01 that the 287(g) Agreement is unlawful under Minnesota law and that the Freeborn County Sheriff's Office is "prohibited from taking actions" in accordance with the Agreement.  *Id.* ¶ 49.

On January 20, 2026, Defendants removed the complaint to this Court under 28 U.S.C. § 1441(a), asserting that the Court has original jurisdiction under 28 U.S.C. § 1331 because "Plaintiffs' claims are preempted by the federal authority to regulate immigration."  ECF No. 1 ¶ 10.  In response, Plaintiffs move to remand under 28 U.S.C. § 1447(c) and argue that the complaint does not present a question of federal law.  ECF No. 6.  Plaintiffs also seek attorneys' fees.  *See* ECF No. 7 at 17.

## ANALYSIS

Because federal courts are courts of limited jurisdiction, a defendant "may remove civil actions to federal court only if the claims could have been originally filed in federal court."  *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).  Here, Defendants invoke "federal question" jurisdiction,

4

which provides a federal court with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because they seek removal and oppose remand, Defendants have "the burden to establish federal subject matter jurisdiction," and "all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Co-op.*, 561 F.3d at 912 (citations omitted).

Whether an action "arises under" federal law is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This review examines "the 'well pleaded' allegations of the complaint and ignore[s] potential defenses." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Here, Plaintiffs' complaint asserts that Minnesota law prohibits Defendants from executing certain provisions of the 287(g) Agreement, and that if Defendants execute those provisions, the County will spend taxpayer money on unlawful activities. Such "taxpayer standing" causes of action are recognized under Minnesota common law, and allow a taxpayer to challenge the "unlawful disbursements of public funds." *Minnesota Voters All. v. Hunt*, 10 N.W.3d 163, 169 (Minn. 2024). Plaintiffs will, as a result, prove their case if Minnesota law prohibits the alleged actions and those actions would cost the taxpayer's money. *Id.* Nothing about that claim, however, requires Plaintiffs to prove any aspect of federal law.

Despite this, Defendants argue that the complaint raises a federal question, for two reasons. First, Defendants assert that "Plaintiffs' claims are preempted by the federal authority to regulate immigration." ECF No. 1 ¶ 10. Preemption "exists where a federal

5

law has superseded a state law claim," and encompasses the "ordinary preemption" concepts of express preemption, conflict preemption, and field preemption. *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 248 (8th Cir. 2012).[3]   Defendants argue that any Minnesota law that forbids them from executing the 287(g) Agreement is conflict preempted because it would "stand[] an obstacle to the execution of the purposes and objectives of Congress in enabling local law enforcement to act as immigration officials." ECF No. 1 ¶ 16.  In other words, Defendants believe that if Minnesota law hinders ICE's ability to execute the Section 287(g) Agreement, that law is preempted.  But it is well-established that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint." *See Caterpillar*, 482 U.S. at 393; *see also MFA Petroleum Co.*, 701 F.3d at 248 (citation omitted) (cleaned up) ("An assertion that a state claim is preempted by federal law is a defense to the state law claim and not a ground for federal jurisdiction.").  Defendants' preemption argument does not, then, provide a basis for federal jurisdiction.  Instead, they are entitled to assert that defense in state court.[4]

---

[3]    As a quick refresher, express preemption "occurs where a federal law explicitly prohibits or displaces state regulation in a given field." *Id.*  Field preemption exists when "Congress has forbidden the State to take action in the *field* that the federal statute pre-empts," and "conflict pre-emption exists where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (internal quotation marks omitted) (citations omitted).

[4]    Indeed, that is precisely what happened in *Nash v. Mikesell*, 557 P.3d 369 (Colo. Ct. App. 2024), in which citizens sued local law enforcement entities for executing a 287(g) Agreement.  The Colorado Court of Appeals ultimately held that state statutes that

Defendants also cite, in passing, the "complete preemption" doctrine.  ECF No. 1 ¶ 10.  Complete preemption occurs when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim.'"  *Caterpillar*, 482 U.S. at 393 (quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  Complete preemption exists only when "a federal statute 'wholly displaces the state-law cause of action,' such that 'a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'"  *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1066 (8th Cir. 2023) (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8).  A conclusion that there is complete preemption "effectively maintains that the plaintiff has simply brought a mislabeled federal claim, which may be asserted under some federal statute."  *MFA Petroleum Co.*, 701 F.3d at 247 (citation omitted) (internal quotation marks omitted). Complete preemption is "very rare."  *Minnesota ex rel. Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 710 (8th Cir. 2023).  Indeed, the United States Supreme Court has found only three federal statutes that completely preempt state-law causes of action:  Section 301 of the Labor Management Relations Act; Section 502(a) of ERISA; and Sections 85 and 86 of the National Bank Act.  *Am. Petroleum Inst.*, 63 F.4th at 710.  The Eighth Circuit has identified three other statutes that completely preempt state-law claims: the Federal Railroad Safety Act, the Railway Labor Act, and the Indian Gaming Regulatory Act.  *MFA Petroleum Co.*, 701 F.3d at 248.

---

prohibited law enforcement officers from arresting or detaining individuals on the basis of civil immigration detainers were not preempted by Section 1357(g).  *Id.* at 377–78.

Here, Defendants do not argue that Plaintiffs' state-law claim is, in reality, a federal claim. Indeed, they develop no argument on complete preemption.[5] Instead, they variously assert "obstacle" preemption, ECF No. 1 ¶ 15, or conflict preemption, ECF No. 11 at 4. In other words, Defendants believe that if Minnesota law hinders ICE's ability to execute the Section 287(g) Agreement, that law is preempted. But that is nothing more than the "ordinary" defense of conflict preemption; it says nothing about whether a federal statute "wholly displaces the state-law cause of action." *Cagle*, 78 F.4th at 1066 (citation omitted). As a result, complete preemption does not apply.

Secondly, and separate from ordinary or complete preemption, Defendants seek to invoke a "special and small" category of claims that are recognized by courts to "necessarily raise a substantial, disputed federal question." *Am. Petroleum Inst.*, 63 F.4th at 709, 711 (citations omitted); *see* ECF No. 11 at 5. Under this theory, when a claim otherwise premised on state law "nonetheless turn[s] on substantial questions of federal law," a court may "treat the claim[] as arising under federal law even though state law creates the cause of action." *Am. Petroleum Inst.*, 63 F.4th at 711 (citations omitted). But this exception applies only where a federal issue is: (1) necessarily raised, (2) actually

---

[5]    Parties and courts have consistently confused ordinary preemption and complete preemption. *See MFA Petroleum Co.*, 701 F.3d at 248; *see also, e.g.*, *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005) (explaining that although "complete" and "ordinary" preemption "are linguistically related, they are not as close kin jurisprudentially as their names suggest"); *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999) ("The inclusion of the term 'preemption' within the doctrine's label, while not inaccurate, has enkindled a substantial amount of confusion between the complete preemption doctrine and the broader and more familiar doctrine of ordinary preemption.").

disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Id.* (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Defendants' argument fails on the first element.

Defendants assert that because the complaint touches on immigration law—specifically 8 U.S.C. § 1357(g)—it necessarily raises a federal question. But the mere presence of a federal issue in a complaint does not mean the complaint raises a federal question. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (explaining that the presence of a federal issue is not "a password opening federal courts to any state action embracing a point of federal law"); *Moore v. Kansas City Pub. Schs.*, 828 F.3d 687, 692 (8th Cir. 2016) (citations omtited) (cleaned up) (noting that although a complaint contained a "few references" to federal law, the complaint's "theories of liability arise out of [state] statutory and common law" and were "not dependent on resolution of a substantial question of federal law"). Instead, a "federal question 'is presented' when the complaint invokes federal law *as the basis for relief*." *Beneficial Nat'l Bank*, 539 U.S. at 12 (Scalia, J. dissenting) (emphasis added). The focus here is on Plaintiffs' claims, not Defendants' defenses. *Am. Petroleum Inst.*, 63 F.4th at 711 ("A federal issue is necessarily raised when it "is a *necessary* element of one of the well-pleaded state claims."). To that end, a "removing defendant should be able to point to the specific elements of the plaintiff's state law claims that require proof under federal law." *Id.* (citation modified).

Defendants point to no specific element of Plaintiffs' taxpayer claim that requires "proof" under federal law. Defendants, instead, assert that "the question of whether the

federal statute grants, as the contract purports to, the power to arrest is necessarily raised." ECF No. 11 at 6.  But that is a mischaracterization of Plaintiffs' complaint.  The complaint does not raise the issue of whether federal law—Section 287(g)—allows the arrest of noncitizens by local law enforcement.  Undoubtedly, it does.  *See* 8 U.S.C. § 1357(g)(1) (authorizing the U.S. Attorney General to enter 287(g) Agreements under which the local entity may investigate, apprehend, and detain noncitizens "to the extent consistent with State and local law").  Instead, the complaint rests solely on whether state law *prohibits* such arrests or prolonged detention *despite* Section 287(g)'s authorization.  *See* ECF No. 1-1 ¶ 22 ("In short, Minnesota law does not authorize state and local [law enforcement agencies] to hold or arrest someone based on an immigration detainer.").  To prevail on that claim, and as discussed above, Plaintiffs will only need to prove that Minnesota law does not allow such arrests or detentions.  To be sure, Defendants believe that Section 287(g) displaces any state law that inhibits Section 287(g) Agreements.  But that is, again, nothing more than an ordinary preemption defense and is not relevant to Plaintiffs' claim itself.  As a result, it cannot "necessarily raise" a federal issue.[6]  *Am. Petroleum Inst.*, 63 F.4th at 712 (rejecting federal jurisdiction where "resolving . . . the merits of [the plaintiff's] claims

---

[6]      Defendants also suggest that ICE should have been included as a defendant to this lawsuit and that they will eventually seek to include ICE as a party.  ECF No. 11 at 10.  But Defendants develop no argument as to why that assertion affects whether the Court has subject-matter jurisdiction over this case.  The Court need not, as a result, address the issue further.  *See In re Vera T. Welte Testamentary Tr.*, 96 F.4th 1034, 1039 (8th Cir. 2024) (explaining that a court is "not obliged to consider [a] perfunctorily raised, undeveloped argument").  Moreover, as acknowledged at oral argument, nothing would prevent ICE from moving to intervene or for leave of court to file an amicus brief in the state case.

10

does not require the court to resolve any questions governed by federal law"); *see Hartel v. Beazer E., Inc.*, No. 23-cv-1629, 2025 WL 964007, at *7 (W.D. Pa. Mar. 31, 2025) ("Defendants may certainly choose to raise their obligations under and/or their compliance with federal laws in defending against Plaintiffs' claims, but, as previously noted, the existence of a defense involving federal law may not be the basis for removing an action to federal court."). Accordingly, Plaintiffs' motion to remand is granted.

The Court now turns to Plaintiffs' request for attorneys' fees. ECF No. 7 at 17. Section 1447 allows a federal court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court has considerable discretion in deciding whether to award attorneys' fees, but generally "the standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "Absent unusual circumstances," courts may award attorneys' fees under Section 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* The reasonableness of the removal is based on "the objective merits of removal at the time of removal, irrespective of the ultimate remand," not the potential "motive of the removing defendant." *Convent Corp. v. City of North Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015) (citations omitted).

Here, while ultimately meritless, Defendants' removal did not lack an objectively reasonable basis sufficient to justify a fee award. Defendants attempted to remove the action based on federal-question jurisdiction, citing preemption doctrines and otherwise making a plea towards the "special and small" category of cases that implicate a

11

particularly important federal interest. As to preemption, although only complete preemption could have justified the removal, the Eighth Circuit has noted that "[s]ometimes there is confusion between complete preemption and what has been termed 'ordinary' preemption." *MFA Petroleum Co.*, 701 F.3d at 248. And as to the special and small category, it was not altogether unreasonable to ask a federal court to exercise jurisdiction over a case that might eventually involve the interplay of federal immigration law and state law. The Court therefore denies Plaintiffs' request for an award of attorneys' fees.

## CONCLUSION

Based upon all of the files, records, and proceedings in the above-captioned matter,

**IT IS ORDERED THAT**:

1.     Plaintiffs' Motion to Remand (ECF No. 6) is **GRANTED**;

2.     Plaintiffs' request for attorneys' fees is **DENIED**; and

3.     This action is **REMANDED** to the District Court of the State of Minnesota, Third Judicial District, County of Freeborn.

Dated: May 22, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge

12